# Funding an Agency's Functions from Its Working Capital Fund

The Secretary of Commerce may designate certain agency functions now funded out of his Department's General Administration (GA) appropriation as "central services" and transfer responsibility for their funding to the working capital fund, 15 U.S.C. § 1521, so that they will henceforth be paid for with funds appropriated to the various component bureaus of the Department of Commerce. The Secretary may thereby avoid exhaustion of the GA account, the likely consequence of a ruling of the Comptroller General disallowing direct reimbursement of the GA by the bureaus on grounds that it would unlawfully augment the GA appropriation.

The authority for a working capital fund in 15 U.S.C. § 1521 constitutes an exception to the Comptroller General's rule prohibiting an agency from switching responsibility for funding a particular service from one appropriation account to another.

June 16, 1982

## MEMORANDUM OPINION FOR THE GENERAL COUNSEL, DEPARTMENT OF COMMERCE

This responds to your request for an opinion on whether any of the services now paid out of the Department of Commerce's General Administration (GA) appropriation[1] may be transferred to its working capital fund, 15 U.S.C. § 1521, where they will be paid for out of the appropriations of the various components of the Department. The issue has arisen because of a recent Comptroller General's opinion, B-206669 (Mar. 15, 1982), disallowing direct reimbursement of three services by the components to the GA account.[2] Failure to reimburse the GA account will result in its rapid exhaustion, necessitating the furlough of a substantial number of employees for the remainder of the fiscal year. We believe that the problem can be resolved by the application of a statute that the Comptroller General did not consider—15 U.S.C. § 1521.

### I. Background

Commerce's divisions are funded by several lump sum appropriations covering the Office of the Secretary and the various components, such as the Bureau of

---

[1]
General Administration
Salaries and Expenses
For expenses necessary for the general administration of the Department of Commerce, including not to exceed $2,000 for official entertainment, $28,407,000.
H.R 4169, 97th Cong , 1st Sess. at 2 (1981).

[2] The Comptroller General, reviewing Commerce's proposal, held that the budgetary transfers suggested were an unlawful augmentation of the GA appropriation. 31 U.S C §§ 628, 628-1 (1976) He argued that the funds for the GA account constitute a "specific" appropriation for general, department-wide administration, slip op. at 2, which, once exhausted, cannot be supplemented by transfers from other appropriations *Id* at 4 The three services proposed for reimbursement were (1) the cost of Assistant Secretaries and their immediate staffs, (2) the Office of Personnel Policy, and (3) Special Projects. You have indicated that you will be choosing from a much wider variety of services, totaling over $18,000,000, for transfer under 15 U S.C § 1521

384

the Census. The present continuing appropriation for fiscal year 1982, H.R.J. Res. 370, 97th Cong., 1st Sess., Pub. L. No. 97–92, 95 Stat. 1183, 1190 (1981), appropriated funds "at the rate provided in H.R. 4169," which was passed by the House of Representatives last fall. In H.R. 4169, 97th Cong., 1st Sess. (1981), the GA account received $28,407,000, a reduction of $5,618,000 from fiscal year 1981, and $7,315,000 below the budget request submitted by the President. H.R. Rep. No. 180, 97th Cong., 1st Sess. 8 (1981). Because of this reduction in funding, it was decided to charge to the bureaus' appropriations certain activities formerly charged to the central GA.

The appropriations for the GA, see n.1, and the various bureaus are broadly worded,[3] and would appear to fall into the category known as lump sum appropriations. As a general rule, money in a lump sum appropriation can be spent on anything within the purview of an appropriations act, regardless of the congressional intent indicated in reports, debates, or hearings. *In re Newport News Shipbuilding & Dry Dock Co.*, 55 Comp. Gen. 812, 819–20 (1976); *In re LTV Aerospace Corp.*, 55 Comp. Gen. 307, 319 (1975).[4] Congress can and does place restrictions on an agency's funds when it wants to remove that discretion. *Id.* at 318–19. Resort to legislative intent is only used to discover whether a particular item is within an appropriation's general language—*i.e.*, whether certain kinds of planes fall within the meaning of an appropriation for "military aircraft." *Id.* at 325.

## II. Discussion

The issue in this discussion is whether the bureaus' appropriations may be used to pay for services that have heretofore been paid from the GA account. We believe that they may.

First, the appropriations for most of Commerce's bureaus are lump sum appropriations, *see, e.g.*, n.2, whose monies may be expended on anything within the scope of the appropriation.[5] We believe that you may properly

---

[3] For example, the appropriation for the Patent and Trademark Office states: "For necessary expenses of the Patent and Trademark Office, including defense of suits instituted against the Commissioner of Patents and Trademarks, $118,961,000, to remain available until expended " H R 4169, 97th Cong., 1st Sess , at 8 (1981). Other Commerce units include the Economic Development Administration, the International Trade Administration, the Minority Business Development Agency, the United States Travel and Tourism Administration, the National Oceanic and Atmospheric Administration, the National Bureau of Standards, the National Technical Information Service, and the National Telecommunications and Information Administration

[4] "The realities of the annual appropriations process, as well as nonstatutory arrangements such as reprogramming, provide safeguards against abuse " 55 Comp Gen. at 820.

[5] The absence of specific limitations or prohibitions in the terms of an appropriations statute implies that Congress did not intend to impose restraints upon an agency's flexibility in shifting funds within a particular lump sum account among otherwise authorized activities or programs—unless of course Congress has in some other law specified that funds from the appropriation in question should be spent (or not, as the case may be) in a particular manner By the same token, an agency's legal authority to fund an authorized program from its general operating funds does not depend upon its being able to point to some references to that program in its budget justification or elsewhere in the appropriations process This is because the lawfulness of an expenditure is tested by the terms of the appropriations statute and any other relevant law, and not with reference to legislative history Thus, inclusion of an activity or function in the "class of objects" for which an agency's general funds may be spent does not depend upon Congress' affirmative acknowledgement in the appropriations process that the activity or function will be funded or even its being explicitly so informed by the agency. If the activity or function is one which Congress has elsewhere given the agency authority to perform, its funding does not depend upon its being singled out for specific mention each year in the appropriation process.

385

determine that there are services listed in your submission that are covered by the language of the bureaus' appropriations.

Second, Commerce's working capital fund provides a statutory mechanism for the transfer of funds. 15 U.S.C. § 1521.[6] The Secretary may charge services to the fund which he determines, and the Office of Management and Budget agrees, "may be performed more advantageously as central services." The fund is kept whole through reimbursement from the relevant bureaus which pay in funds for their proportion of the services.[7]

Discretion in determining what is a "central" service lies with the Secretary,[8] and he may designate as "central" any service that he believes will be performed more advantageously on a department-wide rather than a bureau basis. The bureaus may then use their general appropriations to pay for those services pursuant to 15 U.S.C. § 1521.[9]

Since soon after its passage, 15 U.S.C. § 1521 has been used to transfer functions from the Office of the Secretary, where they were paid out of the GA account, to the working capital fund, where they were paid out of the bureaus' appropriations. For example, in 1947 the Secretary asked that the departmental stockroom be transferred to the working capital fund.[10] "The original purchases for stock are made from the appropriation 'Salaries and Expenses, Office of the Secretary, Department of Commerce' [the GA account], with the appropriation

---

[6] Section 1521 provides as follows (emphasis added)·

*There is established a working capital fund* of $100,000, without fiscal year limitation, *for the payment of salaries and other expenses necessary to the maintenance and operation of* (1) central duplicating, photographic, drafting, and photostating services and (2) *such other services as the Secretary, with the approval of the Director of the Office of Management and Budget, determines may be performed more advantageously as central services;* said fund to be reimbursed from applicable funds of bureaus, offices, and agencies for which services are performed on the basis of rates which shall include estimated or actual charges for personal services, materials, equipment (including maintenance, repairs, and depreciation) and other expenses· *Provided,* That such central services shall, to the fullest extent practicable, be used to make unnecessary the maintenance of separate like services in the bureaus, offices, and agencies of the Department *Provided further,* That a separate schedule of expenditures and reimbursements, and a statement of the current assets and liabilities of the working capital fund as of the close of the last completed fiscal year, shall be included in the annual Budget.

*See Department of Commerce Appropriation Bill for 1945. Hearings Before the Subcomm. of the House Comm on Appropriations,* 78th Cong., 2d Sess. 33–35 (1944), H R. Rep. No. 1149, 78th Cong., 2d Sess. 19 (1944)

[7] Approximately $30,000,000 in services are now funded annually through the working capital fund

[8] It is essential, of course, that such services fall within the statutory intent of 15 U.S.C. § 1521, and that they offer truly department-wide benefits. Prior uses of the statute have included designation of fiscal, travel, audio visual, messenger, and laundry services as "central " Services that are of particular use only to a single bureau, or which properly fall only within the scope of that bureau's activities, do not fall within the intent of 15 U S C § 1521.

If a service does not fall within the intent of 15 U S C § 1521, your Office can provide advice on alternative sources of funding, such as through the transfer of personnel Reorg. Plan No 5 of 1950, § 4, *reprinted in* 5 U.S C , App.

[9] We are aware that the Comptroller General has articulated a general rule that where an agency has chosen to pay for an item out of one of two generally available appropriations, the agency must continue to use the first appropriation for the item and cannot decide at some later date to use the second instead. *See* 59 Comp Gen. 518, 520–21 (1980); 23 Comp. Gen 827, 828 (1944); 10 Comp Gen. 440, 443 (1931); 15 Comp. Gen. 101, 102 (1908). *But see* 12 Comp. Gen 331, 333 (1932), 5 Comp. Gen. 479, 480 (1926). We need not examine the ramifications of the rule in this context—or, indeed, whether it can be reconciled with the flexibility the Comptroller General has given the agencies in the lump sum context—because we believe that 15 U S.C § 1521 provides a statutory exception to this general rule of construction. To the extent that this general rule is an interpretation of 31 U S.C § 628-1, which forbids a transfer of funds from one appropriation to another except as specifically authorized, 15 U.S.C. § 1521 provides the necessary authorization

[10] Letter for Hon. James E Webb, Director, Bureau of the Budget, from Acting Secretary Foster, June 30, 1947.

being reimbursed by the bureaus upon the receipt of a billing based on their respective withdrawals."[11] The request was approved by the Bureau of the Budget.[12] Likewise, in 1951, the Secretary asked permission to transfer the expenses of the Department's health unit to the working capital fund.

> For some years the Office of the Secretary has been purchasing supplies and providing funds for the necessary maintenance of the Health Unit.[13]

Approval was promptly granted.[14] The same exchange of letters asked for and approved the transfer of payments for transcripts of Loyalty Board hearings, from the same GA account, which was being used as a "suspense account" until the bureaus paid their bills, to the working capital fund.[15] In 1962, the Bureau of the Budget approved a request that Accounting Operations funded out of the GA account be transferred to the working capital fund, where the bureaus could be charged for its services.[16] Therefore, we believe the Secretary can designate services as "central" and to be paid out of the working capital fund by the bureaus regardless of the appropriation out of which they have traditionally been paid.[17]

We do not believe that it is proper for this Office to outline what can or cannot be designated as a central service. The decision is for the Secretary, who is in the best position to determine what services may be performed more advantageously centrally, informed by prior administrative practice and subject to the approval of the Office of Management and Budget.

Since the Comptroller General did not consider use of 15 U.S.C. § 1521, we do not believe that his opinion should interfere with your implementation of any payments under it.

THEODORE B. OLSON
*Assistant Attorney General*
*Office of Legal Counsel*

---

[11] *Id* at 1

[12] Letter for Acting Secretary Foster from Assistant Director Bailey, Bureau of the Budget, Aug 21, 1947.

[13] Letter for Hon Frederick J. Lawton, Director, Bureau of the Budget, from Assistant Secretary Osthagen, Department of Commerce, Aug. 24, 1951

[14] Letter for Secretary Sawyer, Department of Commerce, from Director Lawton, Bureau of the Budget, Sept. 20, 1951.

[15] Letter, *supra* n. 13, at 1–2.

[16] Letter for Hon David E. Bell, Director, Bureau of the Budget, from Assistant Secretary Koltz, Department of Commerce, Oct 25, 1962; Letter for Secretary Hodges, Department of Commerce, from Bell, Bureau of the Budget, Nov. 9, 1962

[17] The bureaus' payments for services heretofore paid for out of the GA do not constitute a transfer between appropriations in contravention of 31 U S C § 628-1, since the money goes into the working capital fund, not the GA account Services will be billed retroactively directly to the bureaus for the entire fiscal year